IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GARLAND DOLLAR GENERAL LLC,        §
                                   §
                                   §
                    Plaintiff,     §
                                   §  Civil Action No. 3:09-CV-0707-D
VS.                                §
                                   §
REEVES DEVELOPMENT, LLC,           §
et al.,                            §
                                   §
                    Defendants.    §

MEMORANDUM OPINION
AND ORDER

An architect's motion to dismiss the claims of a building purchaser who did not directly contract with the architect requires the court to address whether the architect owed a duty to the purchaser not to negligently design the building; how (if at all) the Texas certificate of merit requirement of Tex. Civ. Prac. & Rem. Code Ann. § 150.002 (Vernon Supp. 2010) operates in federal court; and whether in the context of this case Texas recognizes a claim for breach of implied warranty to perform work in a good and workmanlike manner. For the reasons that follow, the court grants the motion to dismiss, but it allows plaintiff to replead its negligence claim.

I

The background facts and procedural history of this case are set out in a prior memorandum opinion and order and need not be repeated at length. *See Garland Dollar Gen., LLC v. Reeves Dev., LLC*, 2010 WL 1962560, at *1 (N.D. Tex. May 17, 2010) (Fitzwater,

C.J.). In 2007 plaintiff Garland Dollar, LLC ("Garland Dollar") agreed to purchase real property from, *inter alia*, defendant-third-party plaintiff Reeves Development, LLC ("Reeves Development"). Am. Compl. ¶ 12.[1] As part of the transaction, Reeves Development arranged for the construction on the property of a retail building ("building") to house a Dollar General Store. At the time ownership of the property was transferred, Dollar General Store was operating in the building. Thereafter, Garland Dollar discovered that moisture was infiltrating the structure and that the building was exhibiting signs of foundation movement. A professional engineer determined that the building had not been properly designed and/or properly constructed, resulting in the damage to the building. Garland Dollar also alleges that the design of the building failed to take into account the site-specific conditions that were necessary for the building to perform as intended. *Id.*

Garland Dollar sued several defendants in state court, including Reeves Development, alleging claims against some defendants for breach of contract and against all defendants for negligence and breach of an implied warranty that the work they performed in connection with the property and the buildings constructed on the property would be performed in a good and

---

[1]In its amended complaint, Garland Dollar refers to another defendant, Houma Texas Dollar Partners, LLC. For convenience, the court will refer only to Reeves Development.

workmanlike manner.   Reeves Development removed the case to this court.

The court granted Reeves Development leave to file a third-party action against third-party defendant Randy Goodloe ("Goodloe") and others.   Goodloe furnished architectural drawings for the building.   The court also granted Garland Dollar leave to amend its complaint to add Goodloe as a defendant.   *See Garland Dollar*, 2010 WL 1962560, at *1.   Garland Dollar filed a first amended complaint ("amended complaint") that alleges claims against Goodloe (and all other defendants) for negligence and breach of implied warranty.

Goodloe moves to dismiss Garland Dollar's amended complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), contending that the court lacks subject matter jurisdiction because Garland Dollar did not procure a satisfactory certificate of merit to comply with Tex. Civ. Prac. & Rem. Code Ann. § 150.002;[2] that, in Texas, a design professional owes no duty of care to persons with whom he had no relationship or privity; and that Texas law does not recognize an implied warranty arising from the performance of professional services.   Garland Dollar has not responded to Goodloe's motion.

---

[2]Goodloe brings his motion to dismiss under Rule 12(b)(1) and 12(b)(6), but he does not specify the basis for his argument related to the certificate of merit.   Because he does not refer to Rule 12(b)(1) when addressing Garland Dollar's negligence and breach of warranty claims, the court infers that he relies on Rule 12(b)(1) only when addressing his certificate of merit argument.

- 3 -

II

The court first addresses Goodloe's contention that the court
lacks subject matter jurisdiction.[3]

A

"Federal courts are courts of limited jurisdiction, and absent
jurisdiction conferred by statute, lack the power to adjudicate
claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th
Cir. 1998). The court "must presume that a suit lies outside this
limited jurisdiction, and the burden of establishing federal
jurisdiction rests on the party seeking the federal forum." *Howery
v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). If
subject matter jurisdiction is lacking, the court must dismiss the
suit. *See Stockman*, 138 F.3d at 151.

The question whether the court has subject matter jurisdiction
turns on whether the certificate of merit requirement[4] of Tex. Civ.
Prac. & Rem. Code Ann. § 150.002 is a prerequisite for subject
matter jurisdiction or is merely a claim-processing rule. "Clarity
would be facilitated if courts and litigants used the label

---

[3]*See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.
2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in
conjunction with other Rule 12 motions, the court should consider
the Rule 12(b)(1) jurisdictional attack before addressing any
attack on the merits.").

[4]The court will refer to the certificate of merit requirement
because § 150.002 is captioned "Certificate of Merit." Section
150.002 itself, however, refers throughout to an "affidavit" rather
than to a "certificate of merit."

'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).[5] In *Kontrick* the Court determined that a time-bar to a creditor's objection to the discharge of a debtor was not jurisdictional, *id.* at 450-51, but was instead a defense, *id.* at 458-59. The debtor could waive a defense to the objection by failing to timely assert it. *Id.* at 450-51. "[A] court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct; a claim-processing rule, on the other hand, even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point." *Id.* at 456. The Court reasoned that the time bar was not jurisdictional because "[t]he provision conferring jurisdiction over objections to discharge . . . contains no timeliness condition." *Id.* at 453.

In *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), the Court held that the employee-numerosity requirement of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, "relates to the substantive adequacy of [plaintiff's] Title VII

---

[5]The court recognizes that this question is governed by Texas law. Absent controlling Texas precedent, however, the decisions of the Supreme Court that this court now discusses are persuasive on this issue.

claim[.]" *Id.* at 504. The Court analyzed the text and structure of Title VII and determined that the employee-numerosity requirement was separate from the Act's jurisdictional provision. *Id.* at 504-07, 515. Absent clear jurisdictional language, "courts should treat the restriction as nonjurisdictional," *id.* at 516, and view it as a condition precedent to plaintiff's recovery, *see id.* at 511 (citing 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.30[1] (3d ed. 2005)).

## B

The court holds that, like the employee-numerosity requirement in *Arbaugh* and the time-bar in *Kontrick*, the Texas certificate of merit requirement is not a jurisdictional prerequisite. Tex. Civ. Prac. & Rem. Code Ann. § 150.002 provides that "[i]n any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional," the plaintiff must file with the complaint an affidavit of a third-party similarly-licensed professional that sets forth "specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service[.]" *Id.* § 150.002(a) and (b). The plaintiff's failure to file such an affidavit "shall result in dismissal of the complaint against the defendant," and the "dismissal may be with prejudice." *Id.* § 150.002(e). Because § 150.002 says nothing about whether the

failure to file such an affidavit affects the court's subject matter jurisdiction, under the reasoning of *Arbaugh* and *Kontrick* it cannot be viewed as a prerequisite for subject matter jurisdiction. Accordingly, the court holds that Garland Dollar's failure to file the required affidavit with the complaint does not deprive the court of subject matter jurisdiction over Garland Dollar's negligence claim against Goodloe.[6]

### III

The court next turns to Goodloe's motion to dismiss pursuant to Rule 12(b)(6).

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

---

[6]This decision is not inconsistent with the court's ruling in *Hooker v. Dallas Independent School District*, 2010 WL 4025877 (N.D. Tex. Oct. 13, 2010) (Fitzwater, C.J.). In *Hooker* the court addressed whether the exhaustion requirement of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415 *et seq.*, is jurisdictional. *Id.* at *6. The court's conclusion that it is—despite the holdings of *Reed Elsevier, Inc. v. Muchnick*, ___ U.S.___, 130 S.Ct. 1237 (2010), *Arbaugh*, and *Kontrick*—was based on a binding Fifth Circuit case, *Gardner v. School Board Caddo Parish*, 958 F.2d 108, 112 (5th Cir. 1992), and the absence of Supreme Court authority directly on point. *Id.* But in this case, no binding federal or state decision holds that the certificate requirement is jurisdictional. The court therefore follows the reasoning of *Reed Elsevier*, *Arbaugh*, and *Kontrick*.

U.S. 544, 555 (2007)). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "The court does not, however, 'rely upon conclusional allegations or legal conclusions that are disguised as factual allegations.'" *Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *14 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (quoting *Jeanmarie v. United States*, 242 F.3d 600, 602-03 (5th Cir. 2001)).

In deciding a Rule 12(b)(6) motion, the court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive the motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.; see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged——but it has not 'shown'——that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)) (alteration omitted).

IV

Goodloe moves to dismiss Garland Dollar's negligence claim on the ground that he owed no duty to Garland Dollar.

A

To prevail on a negligence cause of action under Texas law, a plaintiff "must establish the existence of a duty, a breach of that duty, and damages proximately caused by the breach." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). The existence of a duty is the threshold issue and a "question of law for the court to decide from the facts surrounding the occurrence in question." *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

> The question of legal duty is a multifaceted issue requiring [the court] to balance a number of factors such as the risk and foreseeability of injury, the social utility of the actor's conduct, the consequences of imposing the burden on the actor, and any other relevant competing individual and social interests implicated by the facts of the case.

*Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 33-34 (Tex. 2002). The court should consider three categories of factors: "(1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy considerations." *Id.* at 34. "[F]oreseeability of the risk is the

foremost and dominant consideration." *Greater Houston Transp. Co.
v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990) (internal quotation
marks omitted). Yet "foreseeability alone is not a sufficient
basis for creating a new duty." *Bird v. W.C.W.*, 868 S.W.2d 767,
769 (Tex. 1994).

B

Goodloe argues that because he was not in privity with Garland
Dollar, he owed it no duty. The cases he cites are
distinguishable, however, because they involved only economic loss.
In cases of physical injury or property damage, Texas courts
recognize a limited duty regardless of privity.

Goodloe relies on *Hartman v. Urban*, 946 S.W.2d 546 (Tex. App.
1997, no writ),[7] in which the court held that an engineering firm
did not owe the ultimate buyer of a property a duty of care in the
preparation of a subdivision plat or a duty to correct errors in an
inaccurate plat. *Id.* at 550. *Hartman* is distinguishable because

---

[7]"While decisions of intermediate state appellate courts
provide guidance, they are not controlling. If a state's highest
court has not ruled on the issue in question, a federal court must
determine, to the best of its ability, what the highest court of
the state would decide." *United Teacher Assocs. Ins. Co. v. Union
Labor Life Ins. Co.*, 414 F.3d 558, 565-66 (5th Cir. 2005)
(citations omitted). "Federal courts in *Erie* cases apply existing
law or predict what the state's supreme court will do. They do not
enlarge state law on their own initiative." *Sentry Ins. v. DFW
Alliance Corp.*, 2007 WL 507047, at *9 (N.D. Tex. Feb. 16, 2007)
(Fitzwater, J.). This court's role is not to "create or modify
state law, rather only to predict it." *Batts v. Tow-Motor Forklift
Co.*, 66 F.3d 743, 750 (5th Cir. 1995) (quoting *Lawrence v. Va. Ins.
Reciprocal*, 979 F.2d 1053, 1055 (5th Cir. 1992)).

the buyer's damage was purely economic (apparently the buyer never built a home based on the inaccurate plat), and Texas courts traditionally distinguish between physical damage and economic loss when determining whether a duty exists. *See Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 293 (Tex. App. 2000, pet. denied) (noting that the type of injury is related to whether a duty is owed); *see also Dana Corp. v. Microtherm, Inc.*, 2010 WL 196939, at *27-28 (Tex. App. Jan. 21, 2010, pet. filed) (not designated for publication) (on rehearing) (affirming directed verdict denying plaintiff's negligence claim where plaintiff and defendant were not in contractual privity and plaintiff sought compensation only for economic loss).[8]  Likewise, the Restatement (Second) of Torts § 324A only recognizes negligence liability to a third person when physical harm results. *See* Restatement (Second) of Torts § 324A (1965).[9]  Lack of privity is a defense only to economic injury

---

[8]Likewise, in *Shanley v. First Horizon Home Loan Corp.*, 2009 WL 4573582, at *12-13 (Tex. App. Dec. 8, 2009, no pet.) (not designated for publication), the court held that the plaintiff had no negligence claim against the defendant when there was no privity and no physical harm.  In *Shanley* homeowners asserted a negligence claim against a construction draw inspection service retained by their construction lender. *Id.* at *1.  The inspector, relying on *Muniz v. State Farm Lloyds*, 974 S.W.2d 229 (Tex. App. 1998, no pet.), argued that he owed no duty to the homeowners. *Id.* at *12.  The court distinguished *Muniz*, in which the relevant duties arose "only by virtue of the special relationship created by a contract of insurance," and held that plaintiffs were owed no duty because they alleged no physical harm. *Id.* at *12 n.10, *13.

[9]Texas follows § 324A. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837-38 (Tex. 2000).

actions and is "not permitted in suits for personal injury[.]" *Bernard Johnson, Inc. v. Cont'l Constructors, Inc.*, 630 S.W.2d 365, 370 n.4 (Tex. App. 1982, writ ref'd n.r.e.); *see also Dana Corp.*, 2010 WL 196939, at *27; *Shanley v. First Horizon Home Loan Corp.*, 2009 WL 4573582, at *12-13 (Tex. App. Dec. 8, 2009, no pet.) (not designated for publication) (holding that construction draw inspection service that was not in privity with homeowners owed homeowners no duty where "there [was] no evidence of physical damage to the [homeowners] or their home; rather, their complaint is one of pecuniary loss only"). In its amended complaint, Garland Dollar alleges that moisture infiltrated the building and that the structure has exhibited signs of foundation movement. *See* Am. Compl. ¶ 12. Because Garland Dollar alleges that it suffered property damage, not merely economic loss, it is possible that Goodloe could owe a duty to Garland Dollar that would support a negligence claim despite a lack of privity.[10]

---

[10]The other cases that Goodloe cites are also inapposite. In *Muniz* and *Dagley v. Haag Engineering Co.*, 18 S.W.3d 787 (Tex. App. 2000, no pet.), the courts held that engineering firms retained by insurance companies owned no duty to the insureds to properly investigate the claims. *See Muniz*, 974 S.W.2d at 236-37; *Dagley*, 18 S.W.3d at 790-91. But in neither case did the plaintiffs allege that the engineering firm caused them personal injury or property damage, and both courts held that the engineering firm was an agent of the insurance company. *See Muniz*, 974 S.W.2d at 236-37; *Dagley*, 18 S.W.3d at 790-91.

C

Although the absence of privity is insufficient of itself to defeat Garland Dollar's negligence claim, that does not end the matter. The duty, if any, that Goodloe owed Garland Dollar is determined by the terms of Goodloe's contract with Reeves Development. *See Dukes v. Philip Johnson/Alan Ritchie Architects, P.C.*, 252 S.W.3d 586, 594-95 (Tex. App. 2008, pet. denied) ("[W]e look only to the [contract] to determine whether [the architectural firm] owed a duty to the decedents."); *Ely v. Gen. Motors Corp.*, 927 S.W.2d 774, 781 (Tex. App. 1996, writ denied) ("Although a third party could not recover under the terms of the contract . . ., a tort duty may arise from a contractual relationship."); *see also Bernard Johnson*, 630 S.W.2d at 371 (noting fundamental proposition that "the architect's relation to the parties and the work is one specified by the contracting parties in their bargained-for agreement"). In *Dukes* a mother sued an architectural firm involved in the renovation of a city fountain in which her children drowned. *Id.* at 590. The architectural firm performed its services under a contract with the city. *Id.* at 594-95. To determine what duty, if any, the architectural firm owed the decedents (who, like Garland Dollar, were not parties to the professional services contract), the court looked exclusively to the contract between the architectural firm and the city. *Id*. Reviewing the contract, the court held that the architectural firm

did not owe a duty to the decedents because the contract did not specify that the architects had any contractual obligation to report or make safe hazards that they may have detected in the fountain. *Id.* at 595.

In the present case, Garland Dollar's specific allegations against Goodloe are found in one paragraph of its amended complaint. *See* Am. Compl. ¶ 16. This paragraph adopts the pertinent allegations made by Reeves Development in its claim against Goodloe. *See id.* ("[Garland Dollar] adopts and reasserts, on information and belief as necessary, those allegations."). The amended complaint itself is wholly conclusory and insufficient under *Twombly* and *Iqbal*. But while Garland Dollar adopts the allegations made by Reeves Development against Goodloe,[11] and Reeves Development's first amended third-party claim refers to an agreement between Reeves Development and Goodloe, *see* 1st Am. 3d Party Claim ¶ 3.01, and although it generally describes the terms of the contract, *id.* at 4.01, it does not contain sufficient detail to determine the nature of Goodloe's duty, if any, respecting Garland Dollar. In ¶ 3.01 Reeves Development alleges that it "entered into an Agreement with Goodloe to provide architectural drawings for the Dollar General Store." And in ¶ 4.01 Reeves

---

[11]Presumably, Garland Dollar adopts the allegations contained in the first amended third-party claim against Randy Goodloe filed on May 18, 2010, just weeks before Garland Dollar filed its amended complaint on June 1, 2010.

Development alleges that "[t]he agreement provided that [Goodloe] would create architectural drawings for a Dollar General store Reeves Development would [be] building." Accordingly, the allegations of Garland Dollar's amended complaint, and those it adopts from Reeves Development's first amended third-party claim, are too conclusory to enable the court to hold that Goodloe owed any relevant duty to Garland Dollar.

The court therefore grants Goodloe's motion to dismiss Garland Dollar's negligence claim based on the alleged absence of a duty owed to Garland Dollar.

D

The court next considers whether Garland Dollar's negligence claim must be dismissed under Rule 12(b)(6) for failure to file the certificate of merit required by Tex. Civ. Prac. & Rem. Code Ann. § 150.002.

1

Because the relevant state statute, § 150.002, and federal rule, Rule 8, have different complaint requirements, the court must first determine whether the state statute applies. If the state statute "directly collides" with a federal rule of civil procedure, the federal rule must be applied in a diversity case unless it violates the Constitution or the Rules Enabling Act, 28 U.S.C. § 2072. *See Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4-5

(1987).[12]  To determine whether there is a direct collision, the court asks whether the scope of the federal rule is sufficiently broad to control the issue before it.  *See id.*  "[F]ederal law and state law [need not] be perfectly coextensive and equally applicable to the issue at hand"; the federal law must only be "sufficiently broad to cover the point in dispute."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 n.4 (1988).  If no direct collision exists, the court must look to *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938), to determine whether state law should apply.  *See Hanna v. Plumer*, 380 U.S. 460, 466-67 (1965).  State law would apply if it "significantly affect[s]" the result of the litigation.  *See id.* at 466.

2

Rule 8(a) requires that a complaint contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

---

[12]The federal rules should not be construed narrowly, however, to avoid a direct collision with state law.  *See Affholder, Inc. v. S. Rock, Inc.*, 746 F.2d 305, 308 (5th Cir. 1984).

The state law contains an additional requirement: along with the complaint,[13] the plaintiff must file a certificate of merit from a licensed professional specifying the defendant's acts of negligence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a). Failure to file the certificate with the complaint results in dismissal of the complaint. *See* § 150.002(e).

The Third Circuit considered a similar state requirement and held that it did not conflict with Rule 8. *See Chamberlain v. Giampapa*, 210 F.3d 154, 160 (3d Cir. 2000) (holding that state and federal law could coexist because "[t]he affidavit of merit statute has no effect on what is included in the pleadings" and is intended to "assure that malpractice claims for which there is no expert support will be terminated at an early stage").[14]

---

[13]Interestingly, § 150.002(a) refers to a "complaint" although the Texas Rules of Civil Procedure use the term "petition," *see* Tex. R. Civ. P. 22 ("A civil suit in the district or county court shall be commenced by a petition filed in the office of the clerk."). As does § 150.002(a), the court will use the term "complaint."

[14]The court is unaware of a similar decision in this circuit that is binding on this court. In *Chapman v. United States*, 353 Fed. Appx. 911, 913-14 (5th Cir. 2009) (per curiam), the court affirmed the dismissal of a prisoner's medical malpractice claim because the prisoner failed to file an expert report within 120 days of filing his complaint, as required by Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon 2003). But the court applied state law without considering its applicability in federal court. *Id*. at 913-14.
District courts in this circuit have considered the applicability of similar statutes and reached different results. In *Poindexter v. Bonsukan*, 145 F.Supp.2d 800 (E.D. Tex. 2001), the court considered the applicability of a Texas law requiring that an expert report be filed with a petition alleging medical

- 17 -

The Third Circuit's reasoning in *Chamberlain* is persuasive.[15] While Rule 8 requires that a plaintiff give a defendant sufficient notice, § 150.002 is not a pleading standard but rather requires that a plaintiff provide expert testimony to support his claim.

3

The court therefore proceeds to the second step of the *Hanna* analysis: whether the state law "significantly affects" the outcome

_____

malpractice. *Id.* at 802-03. The court determined that the state statute conflicted with Rules 26(a)(2) and 37 because it hampered the federal court's discretion to direct the filing of expert reports and differed on the content to be included in the report and potential penalties. *Id.* at 808-09. *See also Nelson v. Myrick*, 2005 WL 723459, at *2-3 (N.D. Tex. Mar. 29, 2005) (Fish, C.J.) (same).

But in *Cruz v. Chang*, 400 F.Supp.2d 906 (W.D. Tex. 2005), the court declined to follow *Poindexter*. *Id.* at 913 (noting that court "may not accord a rule an unduly broad interpretation to force a conflict between a state law and federal rule"). *Cruz* reasoned that Rule 26 controlled discovery related to expert testimony, while the state law addressed requirements for a preliminary merits review of claims. *Id.* at 913-14 ("The provisions by definition cannot overlap as the [state law] is by definition a non-discovery procedure and the [federal rule] is a discovery procedure."). The court reasoned "the [Texas] Legislature clearly intended to influence substantive outcomes. The filing of an expert report is not simply a procedure *qua* procedure but is instead a vehicle for dismissal of frivolous claims." *Id.* at 914.

[15]*Chamberlain* is somewhat distinguishable in that the New Jersey statute at issue requires the plaintiff to file the certificate within 60 days from the date the answer was filed, whereas, except when limitations is about to run, the Texas statute requires that the certificate of merit be filed with the complaint. *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a); *but see* § 150.002(c) (allowing plaintiff to file certificate of merit within 30 days of filing where complaint is filed within 10 days of the expiration of the statute of limitations). Otherwise, there are no meaningful distinctions between the Texas and New Jersey laws.

of the instant case. *See Hanna*, 380 U.S. at 466. Section 150.002(e) requires that a court dismiss a professional negligence claim filed without a certificate of merit, and it authorizes courts to dismiss with prejudice. *See* § 150.002(e). Because the state law affects the outcome of the case, it applies in a diversity case in federal court.

Applying § 150.002 to this case, the court dismisses Garland Dollar's negligence claim against Goodloe without prejudice.[16] Garland Dollar alleges that Goodloe provided architectural drawings. Although Garland Dollar filed a certificate of merit with its amended complaint, and the certificate pointed out Goodloe's negligent act, the affidavit was composed by an engineer, not an architect. Because Goodloe is an architect, § 150.002(a) requires Garland Dollar submit an affidavit of another architect.

The court therefore dismisses Garland Dollar's negligence claim without prejudice.

V

The court now turns to Goodloe's motion to dismiss Garland Dollar's breach of implied warranty claim.

Garland Dollar alleges that "Defendants impliedly warranted that the work they performed in connection with the property . . . and the buildings constructed thereon would be performed in a good

---

[16]The dismissal is without prejudice because the court is permitting Garland Dollar to replead.

– 19 –

and workmanlike manner.  However, their work was not performed in a good and workmanlike manner[.]" Am. Compl. ¶ 25.  Goodloe argues that Texas does not recognize a cause of action for a breach of implied warranty for professional services.

The Texas Supreme Court has held that there is no implied warranty for good and workmanlike performance of purely professional services, provided other remedies are available.  *See Murphy v. Campbell*, 964 S.W.2d 265, 268-69 (Tex. 1997) ("[Defendant] argues that Texas law does not recognize a cause of action for breach of an implied warranty of professional services. We agree."); *but see White Budd Van Ness P'ship v. Major-Gladys Drive Joint Venture*, 798 S.W.2d 805, 812-14 (Tex. App. 1990, writ dism'd) (holding that implied warranty of good and workmanlike services can apply to architectural services in action under Texas Deceptive Trade Practices-Consumer Protection Act).  The court in *Murphy* explained that if a plaintiff can obtain full redress in another action——like negligence or breach of contract——there is no need for an additional remedy based on an implied warranty.  *See Murphy*, 964 S.W.2d at 269; *see also Interstate Contracting Corp. v. City of Dallas,* 2000 WL 1281198, at *3 (N.D. Tex. Sep. 8, 2000) (Lynn, J.) (holding that engineering services provided in construction of storm water retention lakes were professional services and therefore not subject to implied warranty of good and workmanlike performance), *rev'd on other grounds*, 407 F.3d 708 (5th

Cir. 2005). Goodloe provided professional architectural services to Garland Dollar, and Garland Dollar has other available avenues for recovery, such as a negligence claim.[17]

Goodloe also argues that because he is not a party to a contract with Garland Dollar, Garland Dollar cannot assert a breach of implied warranty claim against him. "Regarding breach of implied warranty claims, Texas courts have consistently held that a property owner may not recover from a subcontractor with whom the owner had no direct contractual relationship." *Schambacher v. R.E.I. Elec., Inc.*, 2010 WL 3075703, at *4-6 (Tex. App. Aug. 5, 2010, no pet.) (not designated for publication) (affirming summary judgment dismissing homeowner's implied warranty claim where there was no evidence that homeowner and subcontractor were in privity); *see also Irwin v. Nortex Found. Designs, Inc.*, 2009 WL 2462566, at *2-3 (Tex. App. Aug. 13, 2009, no pet.) (not designated for publication) (same). Garland Dollar alleges that Goodloe was a subcontractor or agent of Reeves Development. Am. Compl. ¶ 18. Garland Dollar thus cannot state an implied warranty claim upon which relief can be granted against Goodloe.

Garland Dollar's claim for breach of an implied warranty of good and workmanlike performance is therefore dismissed as to Goodloe.

---

[17]That Garland Dollar has failed to adequately plead such a claim does not mean the remedy is unavailable.

Although the court is dismissing Garland Dollar's negligence claim, it will permit Garland Dollar to replead. Courts often grant plaintiffs one opportunity to refile a dismissed claim, unless it appears the plaintiff cannot cure the initial deficiencies in the complaint. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.") (internal quotation marks omitted).

Because there is no indication that Garland Dollar cannot, or is unwilling to, cure the defects identified in this memorandum opinion and order, the court grants it 30 days from the date this memorandum opinion and order is filed to file a second amended complaint that states a negligence claim on which relief can be granted. Garland Dollar is not granted leave, however, to replead its breach of implied warranty claim because the defect in that claim is incurable.

*     *     *

Goodloe's June 9, 2010 motion to dismiss Garland Dollar's amended complaint is granted. Garland Dollar is granted 30 days from the date this memorandum opinion and order is filed to file a second amended complaint that states a negligence claim on which relief can be granted.

**SO ORDERED.**

October 21, 2010.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE